JS-6

# United States District Court
# Central District of California
# Western Division

| | |
|---|---|
| JOHN A LAPALM, | CV 24-09674 TJH (PDx) |
|     Plaintiff, | |
|   v. | Order |
| FCA US, LLC, | |
|     Defendant. | |

The Court has considered Plaintiff John A Lapalm's motion to remand [dkt. # 20], together with the moving and opposing papers.

On September 24, 2023, Lapalm purchased a certified pre-owned 2021 Jeep Compass Trailhawk ["the Vehicle"]. The Vehicle, allegedly, had a transmission defect that was known to Defendant FCA US, LLC ["FCA"]. And, FCA, allegedly, refused to replace or repurchase the Vehicle.

On September 18, 2024, Lapalm filed this case in the Los Angeles County Superior Court against FCA, alleging: (1) Claims for breach of implied and express warranties in violation of California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790, *et seq.* ["Song-Beverly"]; and (2) A claim for fraudulent inducement

to purchase the Vehicle. Lapalm alleged that his damages were at least $35,001.00, with no details as to how he calculated that amount. The Song-Beverly claims are based on FCA's alleged failure to honor its warranty obligations after the Vehicle was purchased The fraudulent inducement claim is based on FCA's alleged concealment of the transmission defect before Lapalm purchased the Vehicle.

On November 8, 2024, FCA removed based on diversity jurisdiction. In its notice of removal, FCA asserted that Lapalm is a citizen of California, that FCA is incorporated in the Netherlands and has its principal place of business in the United Kingdom, and that the amount in controversy exceeded $75,000.00.

Lapalm, now, moves to remand based on the amount in controversy.

**Partial Settlement**

On October 14, 2025, after the motion to remand was fully briefed, the parties filed a notice of settlement, which stated that Lapalm accepted FCA's Offer of Judgment. However, the parties have not yet reached a settlement as to Lapalm's right to recover attorneys' fees, costs and expenses under Song-Beverly. The parties stated that if they are unable to reach an agreement as to fees, costs and expenses, Lapalm will file a motion for fees, costs and expenses. Thus, this case has not been completely settled. Consequently, the Court will, now, consider the motion to remand.

**Subject Matter Jurisdiction**

The Court is a court of limited jurisdiction, *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994), and has an independent obligation to ensure that it has subject matter jurisdiction over the cases before it, *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). Subject matter jurisdiction cannot be waived by the parties. *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986). Further, a removed case must be remanded if the Court lacks subject matter jurisdiction. 28 U.S.C. § 1441(a).

Thus, despite the partial settlement reached by the parties, the Court must determine whether it has subject matter jurisdiction over this case.

**Diversity Jurisdiction**

FCA removed based on diversity jurisdiction. Diversity jurisdiction requires an amount in controversy that exceeds $75,000.00. 28 U.S.C. § 1332. The amount in controversy is the maximum amount that a plaintiff could reasonably recover if successful on all alleged claims. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019).

As the removing party, FCA bears the burden, here, of establishing that the Court has subject matter jurisdiction. *See Kokkonen*, 511 U.S. at 377. Any doubt must be resolved in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

Initially, FCA was entitled to rely on the assertions it made in its notice of removal to establish diversity jurisdiction. *See Dart Cherokee Basin Operating Co., LLC, v. Owens*, 574 U.S. 81, 88 (2014). Because the Complaint did not allege that the amount in controversy exceeded $75,000.00, FCA, now, has the burden to prove, with evidence, and by a preponderance of that evidence, that the minimum amount in controversy requirement is satisfied, here. *See Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1121–22 (9th Cir. 2013). The amount in controversy may include compensatory and punitive damages, as well as attorneys' fees awardable under Song-Beverly. *See Gonzales v. CarMax Auto Superstores*, LLC, 840 F.3d 644, 648–49 (9th Cir. 2016).

FCA calculated the amount in controversy, here, based on the sum of: (1) The actual damages permitted under Song-Beverly; (2) The civil penalty permitted under Song-Beverly, which is up to two times the actual damages; (3) Punitive damages of four times the actual damages for the fraudulent inducement claim; and (4) Attorneys' fees likely to be incurred by Lapalm.

**Actual Damages**

If Lapalm prevails on his Song-Beverly claims, he will be entitled to recover, as his actual damages, the full purchase price of the Vehicle, less a reduction in value

based on the number of miles he drove before he took the Vehicle to an FCA dealer for the first attempted repair ["the Mileage Offset"]. Cal. Civ. Code § 1793.2(d)(2)(B)-(C).

FCA did not provide any new evidence in support of its opposition to the motion to remand. However, FCA's opposition referred to the declaration of James A. Sheridan, its Senior Staff Counsel, that was previously filed in support of FCA's notice of removal.

Sheridan declared that the manufacturer's suggested retail price ["MSRP"] for the Vehicle was $29,527.00. Sheridan's declaration was silent as to the Vehicle's actual purchase price. FCA assumed that the MSRP was a reasonable estimate of Lapalm's actual damages. However, FCA failed to provide any authority to support its argument that the MSRP is an acceptable substitution for a vehicle's actual purchase price. FCA, further, argued, that Lapalm did not dispute its use of the MSRP. Nevertheless, subject matter jurisdiction cannot be decided by a party. *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986).

Further, FCA failed to provide any evidence as to the number of miles driven by Lapalm before he first took the Vehicle in for repairs. The Mileage Offset is based on a statutory formula that is calculated as a percentage of the actual price paid; the actual price paid is multiplied by the actual number of miles driven divided by 120,000 miles. Cal. Civ. Code § 1793.2(d)(2)(C). Because FCA failed to provide any evidence as to the number of miles driven, the Mileage Offset cannot be calculated.

The Complaint did not allege Lapalm's actual damages for his Song-Beverly claims, the actual purchase price for the Vehicle, the amount of the Mileage Offset, or the number of miles driven by Lapalm before he took the Vehicle in for the first repair attempt. Likewise, the Complaint did not allege Lapalm's damages for his fraudulent inducement claim.

Consequently, with no evidence as to the actual price paid and the Mileage Offset, FCA failed to establish, by a preponderance of the evidence, Lapalm's actual

damages for his Song-Beverly claims. The Court cannot speculate as to the amount of those damages. *See Chavez v. FCA US, LLC*, CV 19-06003-ODW-GJSx, 2020 WL 468909, *2 (C.D. Cal. Jan. 27, 2020). Therefore, the Court cannot include Lapalm's Song-Beverly actual damages or his fraudulent inducement general damages in the amount in controversy. *See Edwards v. Ford Motor Co.*, CV 16-05852-BRO-PLAx, 2016 WL 6583585 *4 (C.D. Cal. Nov. 4, 2016).

**Civil Penalty**

If FCA willfully failed to comply with its obligations under Song-Beverly, Lapalm can recover a civil penalty of up to twice the amount of his actual damages. Cal. Cal. Civ. Code § 1794(c). FCA calculated the maximum civil penalty, here, by multiplying the Vehicle's MSRP by two, rather than by multiplying Lapalm's actual damages by two. As discussed above, Lapalm's actual damages are unknown. Therefore, the Court cannot include Lapalm's potential civil penalty in the amount in controversy because the potential civil penalty has not been accurately established by FCA. *See Edwards*.

**Punitive Damages**

FCA asserted in its notice of removal that Lapalm could potentially recover punitive damages of no less than four times the MSRP. The Complaint did not specify the amount of punitive damages that Lapalm is seeking, here.

If punitive damages are recoverable, FCA can include them in the amount in controversy. *See Gibson v Chrysler Corp.*, 261 F.3d 927, 945-46 (9th Cir. 2001). Punitive damages are, potentially, recoverable, here, for Lapalm's fraudulent inducement claim. *See Anderson v. Ford Motor Co.*, 74 Cal. App. 5th 946, 971 (2022). Moreover, both punitive damages for the fraudulent inducement claim and a civil penalty for the Song-Beverly claims may be recovered because the conduct that gave rise to each of those claims took place at different times. *Anderson*, 74 Cal. App. 5th at 966-67.

When determining the amount of punitive damages, the Court must consider

three guideposts: (1) The reprehensibility of the defendant's conduct; (2) The proportionality between the actual or potential harm and the punitive damages; and (3) The difference between the punitive damages and any civil penalty that is awardable. *Riley v. Volkswagen*, 51 F.4th 896, 900 (9th Cir. 2022). The reprehensibility of the defendant's alleged conduct is the most important of the three guideposts. *Riley*.

To determine the degree of the reprehensibility, the Court must consider whether Lapalm's harm was physical or economic; whether FCA's conduct was the result of an indifference or a reckless disregard; whether Lapalm was financially vulnerable; whether FCA's alleged conduct involved repeated actions or was an isolated incident; and whether the harm was the result of intentional malice, trickery, or deceit. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 409 (2003).

Generally, the Ninth Circuit has limited punitive damages to no more than four times the amount of actual damages where there are significant economic damages but the misconduct is not particularly egregious. *Riley*, 51 F.4th at 902. Where there are significant economic damages and very egregious misconduct, the Ninth Circuit permits a single digit multiplier larger than four. *Riley*. In sum, there is no bright line rule for the amount of punitive damages because they are very fact dependant. *Riley*.

Here, FCA failed to provide evidence that would allow the Court to evaluate the degree of FCA's reprehensibility. There is no evidence, or allegations, here, regarding, *inter alia*, Lapalm's financial vulnerability, whether FCA directly made any misstatements, whether FCA's alleged actions were isolated or repeated acts, or whether Lapalm's damages were the result of FCA's intentional malice, trickery, or deceit.

Nevertheless, the Court can consider verdicts in analogous cases – those that are factually similar – to reach a reasonable approximation of the amount of punitive damages that might be awarded, here. *See Woolsey v. State Farm General Ins. Co.*, 672 F. Supp. 3d 1018, 1027-28 (C.D. Cal. 2023). FCA cited to two fraudulent concealment cases – *Riley* and *Cieslikowski v. Chrysler*, CV 17-562-MRW, 2020 WL

7868128, *4 (C.D. Cal. Dec. 21, 2020). However, FCA failed to explain why either of those two cases are factually analogous to this case, and the Court could not determine whether those cases are, indeed, factually analogous because of the threadbare facts, here.

Finally, FCA calculated Lapalm's anticipated punitive damages by multiplying the Vehicle's MSRP by four. Like what FCA did for Lapalm's anticipated Song-Beverly actual damages, FCA assumed that the Vehicle's MSRP, rather than the actual purchase price, would be Lapalm's general damages for his fraudulent inducement claim. Multiplying the MSRP by four would result in an inaccurate punitive damages estimate. *See Edwards*.

Consequently, the Court cannot include FCA's inaccurate and unsubstantiated punitive damages estimate in the amount in controversy, here. *See Edwards*.

**Attorneys' Fees**

If Lapalm prevails on his Song-Beverly claims, he may recover reasonable attorneys' fees and costs for those claims. *See* Cal. Civ. Code § 1794(d). FCA argued that attorneys' fees in Song-Beverly cases often exceed $25,000.00, and can, also, exceed $50,000.00.

When considering the amount of attorneys' fees to include in the amount in controversy, the Court can consider fee awards in other cases that have similar litigation strategies and timelines. *Woolsey*. The Court can, also, consider prevailing rates for attorneys doing similar work and who have comparable skills, experience, and reputations. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

In its opposition, FCA referred to Sheridan's declaration and the three exhibits to that declaration to support its assertion that attorneys' fees in Song-Beverly cases often exceed $25,000.00. Sheridan declared that, in his experience, similar cases against FCA commonly resulted in plaintiff's attorneys' fees and costs in excess of $50,000.00.

Exhibit 1 to Sheridan's declaration is an unauthenticated motion for attorney fees

filed by a plaintiff in a Riverside Superior Court Song-Beverly case seeking attorneys' fees and costs of $58,471.07, with hourly rates between $350.00 and $500.00. *Escobar v. General Motors LLC*, No. CVRI2200553 (Riverside Superior Court, July 19, 2023).

Exhibit 2 to Sheridan's declaration is an unauthenticated copy the California Court of Appeal's opinion in *Anderson,* 74 Cal. App. 5th at 950 , which affirmed a San Joaquin Superior Court's attorneys' fee award of $643,615.00.  In *Anderson*, two plaintiffs asserted six claims for: (1) Violation of Song-Beverly; (2) Fraud in the inducement based on intentional misrepresentation; (3) Fraud in the inducements based on concealment; (4) Negligent misrepresentation; (5) Fraud in the performance of a contract based on intentional misrepresentation; and (6) Violation of the Consumer Legal Remedies Act, Cal. Civ. Code §1750, *et seq.* ["CLRA"].  The jury awarded the two plaintiffs Song-Beverly actual damages of $47,715.60, a Song-Beverly civil penalty of $30,000.00, $47,715.60 for the fraud in the inducement based on concealment claim, $47,715.60 for the CLRA claim, and punitive damages of $150,000.00.

Exhibit 3 to Sheridan's declaration is an unauthenticated copy of the California Court of Appeal's opinion  in *Bowser v. Ford Motor Co.*, 78 Cal. App. 5th 587, 627 (2022), which affirmed the Riverside Superior Court's attorneys' fee award of $836,528.12.  In *Bowser*, two plaintiffs asserted claims under Song-Beverly and for fraud based on intentional misrepresentation and fraudulent concealment against Ford based on an engine defect.  The jury awarded the two plaintiffs Song-Beverly actual damages of $42,310.17, a Song-Beverly civil penalty of $84,620.34, $43,084.68 for the fraud claim, and punitive damages of $253,861.02.  *Bowser,* 78 Cal. App. 5th at 593-94.

Neither FCA nor Sheridan explained how *Escobar*, *Anderson* or *Bowser* were  factually or legally similar to the instant case, or whether and how those cases had similar strategies and timelines that would, likewise, be expected for this case.  *See Woolsey*.

Moreover, many Song-Beverly cases settle early, but FCA provided no explanation as to whether this case might settle early or whether it might go all the way to trial. *See Vega v. FCA US, LLC,* CV-05128-VAP-MRWx, 2021 WL 3771795 *3 (C.D. Cal. Aug. 25, 2021).

In sum, FCA's estimate as to Lapalm's attorneys' fees is too speculative to include in the amount in controversy. *See Edwards*.

**Conclusion**

FCA failed to meet its burden to show that the amount in controversy, here, exceeds $75,000.00. *See Fritsch v. Swift Transportation Co. of Az., LLC,* 899 F.3d 785, 795 (9th Cir. 2018).

Accordingly,

It is Ordered that the motion to remand be, and hereby is, Granted.

Date: October 31, 2025

_____
Terry J. Hatter, Jr.
Senior United States District Judge